UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

MICHELE BLACK,

    Plaintiff,

    v.                            Case No. 1:17-cv-01054

UNITED STATES OF AMERICA,

    Defendant.

### OPINION AND ORDER: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Michele Black brings this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (the "FTCA"), seeking damages for injuries allegedly sustained in a motor vehicle collision with a vehicle driven by David P. Kennedy, a Federal Bureau of Investigation (FBI) agent. Defendant now moves for summary judgment, arguing that Plaintiff cannot establih that the accident caused her to suffer a "serious injury" or that her economic losses exceed $50,000 – both preconditions for recovery under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law. § 5101 (the "No-Fault Law"). **ECF 22 at 2.** Plaintiff in turn moves for partial summary judgment, arguing that the rear-ending of Plaintiff's vehicle occurred in negligence for which the United States is liable under doctrines of *respondeat superior* and motor vehicle owner vicarious liability. **ECF 27-1 at 4-5.**

1

For the reasons set forth below, Defendant's motion for summary judgment is denied, and Plaintiff's cross-motion for partial summary judgment is **granted**.

### **Factual Background**

On October 11, 2016, at approximately 7:30 in the morning, Plaintiff Michele Black was in her motor vehicle near Route 5 in Buffalo, New York. **ECF 23 at 1.** Upon braking and coming to a halt to avoid collision with the car in front of her, Plaintiff's vehicle was rear-ended by a vehicle operated by David Kennedy, an FBI employee, causing Plaintiff to sustain physical injuries. **ECF 23 at 1; ECF 24-3 at 25.** Later that day, Plaintiff went to see her primary care physician, Dr. Sharma, with complaints of lower back and mid back pain. **ECF 23 at 5.** Plaintiff did not return to work on October 12, 2016, and was out of work until October 19, 2016. **ECF 23 at 5.** Before the collision, Plaintiff had attended three chiropractic appointments with Salva Chiropractic Center in June 2014. The parties dispute whether Plaintiff presented with a spinal injury at these pre-collision appointments.[1]

---

[1] Defendant attests that Plaintiffs' 2014 medical records from the Salva Chiropractic Center provide evidence of cervical spine, trapezius, thoracic spine, and lumbar spine complaints before the accident. **ECF 23 at 2-3.** Plaintiff contends, however, that Salva Chiropractic's records do not show evidence of cervical spine or lumbar spine injury prior to the accident (only of upper back, neck, and elbow pain). **ECF 27-1 at 6-8; ECF 28**.

2

Plaintiff returned to Dr. Sharma's office two days after the accident with complaints of worsening pain, particularly in her low back and anterior thigh. **ECF 23 at 6**. She did not complain of neck pain and refused medication for pain management. **ECF 23 at 6**. Plaintiff underwent an MRI of her lumbar spine, which showed an L5-S1 disc protrusion encroaching on exiting left L5 nerve root. **ECF 23 at 6**. Plaintiff then followed up with Dr. Sharma's office with continued complaints of back pain. **ECF 23 at 6**.

On October 31, 2016, Plaintiff consulted with Dr. Ryan DenHaese at Axis Neurosurgery with complaints of neck, right shoulder, low back, middle back, left hip, left shoulder, buttock, and right hip pain. **ECF 27-12**. Dr. DenHaese noted the presence of a "far lateral disc protrusion" at the L5-S1 level of Plaintiff's spine. Dr. DenHaese also noted that Plaintiff's "range of motion of her cervical spine [was] limited in all fields with discomfort," and that she had "significant tenderness to palpation and palpable muscle spasms of the paraspinal musculature of the cervical and lumbar spine. **ECF 24-10 at 3.** Plaintiff was recommended to undergo physical therapy. **ECF 24-10 at 2.**

Plaintiff had a cervical spine MRI on November 4, 2016. She saw Dr. DenHaese again on November 10, 2016, when he reviewed her MRI results. **ECF 24-10 at 4-5.** Dr. DenHaese found

3

the presence of disc protrusions at the C5-6 and C6-7 levels of the cervical spine, and noted that Plaintiff's cervical spine range of motion was "severely limited in all fields." **ECF 24-10 at 4-5.** Plaintiff then came under the care of Dr. Jeffrey Lewis at the Buffalo Neurosurgery Group on February 1, 2017. **ECF 24-12.**

Upon reviewing her entire medical history and examining her MRI films, Dr. Lewis noted a cervical disc herniation with spondylosis at the C5-6 level which was producing thecal sac compression. **ECF 24-12 at 5.** He also found a lateral disc herniation at L5-S1 on the left side, consistent with Plaintiff's lower back pain. **ECF 24-12 at 5.** Dr. Lewis attests that Plaintiff "never had trouble with her spine prior to the accident and now she is having severe pain." **ECF 24-12 at 5;** *see also* **ECF 28.** Dr. Lewis observed that Plaintiff was in "desperate pain" with severely restricted range of motion of both her cervical and lumbar spine; he recommended surgery as the ideal treatment. **ECF 24-12 at 5-6.** On February 17, 2017, Dr. Lewis performed an anterior cervical microdiscectomy and fusion with implantation of interbody fusion cage, anterior plate and screw fixation, and bone graft at C5-6 for Plaintiff. *See* **ECF 24-14.** Plaintiff reported that her pre-operative symptoms had improved, but she still had very significant restrictions of range of motion for flexion and extension. **ECF 28 at 9.**

Dr. Lewis saw Plaintiff again on April 26, 2017. She noted improvement in her pain levels, but also reported significant lower back pain with radiation to her left leg. **ECF 28 at 9.** Dr. Lewis recommended an L5-S1 total lumbar discectomy and fusion surgery on Plaintiff's lumbar spine, which he conducted on August 3, 2017. **ECF 24-14 at 1.**

Plaintiff returned to Dr. Lewis's office for post-surgical follow-up care on September 29, 2017. **ECF 28 at 10.** She reported some improvement in symptoms, but also significant pain and spasms following an evaluation for physical therapy. **ECF 28 at 10.** Dr. Lewis attests that Plaintiff had received a telephone call from her employer informing her that she would lose her job if she did not return to work, and he provided her with a return to work note with lifting instructions. **ECF 28 at 11.**

Over the course of 2018, Plaintiff complained of increased lumbar spine back pain. **ECF 28 at 11.** By September of 2018, Plaintiff reported pain in her neck and cervical spine. **ECF 28 at 11.** Dr. Lewis observed a small herniation / disc protrusion at the C6-7 level below the fused C5-6 level, and above the fusion at the C4-5 level. **ECF 28 at 11.** Dr. Lewis discussed surgical intervention with Plaintiff; Plaintiff voiced hesitation out of concern of losing her employment. **ECF 28 at 11.**

By March 2019, Plaintiff reported right sided lower back pain, right leg radiculopathy and right buttocks pain. Dr. Lewis recommended a foraminotomy surgery of the right side of the L4-5 level. **ECF 28 at 12.** Once again, Plaintiff was hesitant to move forward out of concern that she would lose her job if she had to take time off work. **ECF 28 at 12.** At the time of his making of his affidavit, Dr. Lewis attested that the medical condition of Plaintiff's cervical and lumbar spines was not positive, and that she was a candidate for L4-5 surgery on her lumbar spine and for C6-7 fusion of her cervical spine. **ECF 28 at 12.** Dr. Lewis attested that he believed to a reasonable degree of certainty that Plaintiff would need to undergo these surgeries to obtain any lasting or significant relief from her ongoing pain. **ECF 28 at 12.**

## Discussion

I. **Summary Judgment Standard**

To prevail on a motion for summary judgment the movant must show "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521

6

F.3d 130, 132 (2d Cir. 2008). If the movant fails to meet his initial burden, the motion will fail even if the opponent does not submit any evidentiary matter to establish a genuine factual issue for trial. *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677-78 (2d Cir. 1997).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhauser Co.,* 536 F.3d 140, 145 (2d Cir. 2008). In doing so, the opposing party must come forward with sufficient evidence that would justify a reasonable jury in returning a verdict in its favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.,* 712 F .2d 4, 9-10 (2d Cir. 1983).

In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "A party asserting that a fact [ ... ] is genuinely disputed must support the assertion by [ ... ]

citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). "Where, as here, there are cross motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**II. Legal Standard under New York's "No-Fault" Law**

The FTCA provides, in relevant part, that "[t]he United States shall be liable, respecting the provisions of [Title 28] relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The law of the place where the act or omission occurred" governs the dispute. 28 U.S.C. § 1346(b).

New York's "No-Fault" Law limits the circumstances under which an individual injured in a motor vehicle accident may recover punitive damages. Section 5104(a) provides that "in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence

8

in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss." N.Y. Ins. Law §§ 5104(a).

Accordingly, a plaintiff may only recover for "basic economic loss" that exceeds $50,000 or for noneconomic loss where she has sustained a "serious injury" as defined by the statute. N.Y. Ins. Law §§ 5104, 5102(a). "Basic economic loss" includes medical expenses, lost wages, and other reasonable and necessary expenses. *Id.* at § 5102(a); *see also Goodkin v. United States,* 773 F.2d 19, 22 (2d Cir. 1985). The "No-Fault" Law specifically identifies nine types of "serious injuries": (1) "significant disfigurement"; (2) a "permanent loss of use of a body organ, member, function, or system"; (3) a "permanent consequential limitation of use of a body organ or member"; (4) a "significant limitation of use of a body function or system"; (5) "a medically determined injury or impairment of a non-permanent nature, which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment"; (6) "death"; (7) "dismemberment"; (8) "fracture"; and (9) the "loss of a fetus." N.Y. Ins. Law § 5102(d).

**III. Defendant's Motion for Summary Judgment**

Defendant submits that this case should be dismissed on summary judgment because "Plaintiff cannot meet her burden of establishing that the accident caused her to suffer a 'serious injury' or that her economic losses exceed $50,000—-the preconditions for recovery of non-economic and economic damages under New York's "No-Fault" Law, respectively." **ECF 22 at 1.** Viewing all facts in the light most favorable to the non-moving party, Defendant has not demonstrated an absence of any genuine dispute of material fact on either issue.

A.) <u>There is a genuine dispute of material fact as to whether Plaintiff's pecuniary damages exceed $50,000.</u>

First, Defendant has not successfully shown no genuine dispute of material fact as to whether Plaintiff's pecuniary damages exceed $50,000. Plaintiff claims that she suffered future lost earnings of up to $894,875 and future medical care costs totaling $331,088. **ECF 28 at 4.** She explains these numbers in an amended interrogatory response, claiming that she may lose her employment as a result of needing additional surgery due to accident related injuries. **ECF 24-3 at 24.**

Defendant argues that Plaintiff's pecuniary damages claims are unsubstantiated by the record due to the fact that Plaintiff has not attested that she will go forward with surgery or that she will necessarily lose her employment as a result of surgery. However, this gap in the record does not constitute a lack of

10

any factual dispute regarding the size of Plaintiff's future economic losses. According to Dr. Lewis's affidavit, Plaintiff requires additional back surgery to resolve her ongoing and serious spine-injury related back pain. Moreover, the record reflects Plaintiff's ongoing concerns about losing her employment in the event of taking time off work for surgery. Plaintiff has also submitted a Rehabilitation Evaluation of Plaintiff and a Life Care Plan that demonstrate her future expected medical care needs and likely loss of employment and earning capacity, *see* **ECF 27-17; ECF 27-18,** as well as an expert economic report by Dr. Ronald Reiber showing future expected medical care costs of $331,088. **ECF 27-20 at 4**. These record materials create enough of a basis for a genuine dispute of material fact as to whether Plaintiff will suffer future pecuniary damages over $50,0000; a reasonable jury could issue a verdict in favor of Plaintiff based on an evaluation of these materials. As such, Defendant's argument as to economic damages does not pass muster under the summary judgment standard.

    B.) <u>There is a genuine dispute as to material fact regarding whether Plaintiff suffered a "serious injury."</u>

Next, Defendant contends that there is insufficient evidence in the record to support the assertion that Plaintiff incurred a "serious injury" as defined by the "No-Fault" Law. This argument lacks merit where "serious injury" is defined as a

11

"significant limitation of use of a body function or system." N.Y. Ins. Law § 5102(d).[2]

On a motion for summary judgment on the issue of serious injury, "a defendant has the initial burden of establishing a 'prima facie case that the plaintiff's injuries are not serious.'" *Sanchez v. Travelers Cos.,* 658 F.Supp.2d 499, 507 (W.D.N.Y.2009) (quoting *Gaddy v. Eyler,* 79 N.Y.2d 955, 957, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992)). A defendant may satisfy this burden by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them. *Brusso v. Imbeault*, 699 F. Supp. 2d 567, 576 (W.D.N.Y. 2010). The burden then shifts to the plaintiff to come forward with objective evidence that she suffered a serious injury within the meaning of the no-fault law. *Id.*

Here, Defendant has made a prima facie case of non-seriousness based on the testimony of their expert, Dr. Moreland. ***See* ECF 24-16.** Upon reviewing Plaintiff's medical records, Dr. Moreland concluded that Plaintiff had no present injury, impairment, or disability as a result of the accident. **ECF 24-16 ¶ 67.**

---

[2] The Court need not address the other possible definitions of serious injury under the statute, as this provides sufficient grounds for a ruling on the motion.

However, Plaintiff has met her burden of presenting objective evidence that she suffered a "significant limitation of use of a body function or system." A plaintiff may establish a significant limitation by way of an expert's qualitative assessment of a physical condition, provided that the assessment has an objective basis and compared plaintiff's normal function purpose and use of the affected organ, function, or system. *Brusso*, 699 F. Supp. at 577-78. Plaintiff has done so here.

Indeed, Dr. Lewis's affidavit presents a credible medical opinion concluding that Plaintiff suffered serious spinal injuries as a result of the accident which resulted in a diminished capacity for normal functioning and increased amount in pain from her previous spinal condition. **ECF 28;** *see Baytsayeva v. Shapiro*, F. Supp. 2d 6, 22 (E.D.N.Y 2012). A jury could reasonably issue a verdict for the Plaintiff based on its weighing of the expert testimony of both parties; as such, there is a genuine dispute of material fact in this case as to the nature of Plaintiff's injury. Defendant's motion for summary judgment is **denied** on this ground, and the court need not address Defendants' arguments as to the other theories of serious injury.

**IV. Plaintiff's Cross-Motion for Partial Summary Judgment**

Next, Plaintiff timely filed a cross-motion for partial summary judgment arguing that there is no genuine dispute of material fact as to whether the incident at issue was an example of negligence for which the United States is liable under the doctrine of *respondeat superior* and motor vehicle owner vicarious liability.[3] Plaintiff's cross-motion is **granted**.

> A.) <u>There is no genuine dispute of material fact as to Defendants' *respondeat superior* liability for Mr. Kennedy's alleged negligence.</u>

First, Plaintiff submits that the issue of Defendant's *respondeat superior* liability in this case resolved on summary judgment because it is undisputed that David Kennedy was an employee of the United States driving a federal vehicle at the time of the incident. **ECF 28-5 at 9**. Plaintiff has met her burden under the summary judgment standard.

Courts interpret the FTCA's "scope of employment" requirement in accordance with the law of the jurisdiction where the tort occurred. *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). Under New York law, an employer is liable for the negligence of an employee acting within the scope of his employment. *Id.* An employee acts within the scope of his employment when "(1) the employer is, or could be, exercising

---

[3] While Defendant argues that Plaintiff's cross-motion was untimely, this is incorrect. Plaintiff filed a motion for extension of time to file response/reply on June 20, 2019, which was granted by this court on June 21, 2019 with a modified deadline of August 15, 2019. Plaintiff abided by the modified deadline.

some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Id.* at 135 (internal quotation marks and brackets omitted) (quoting *Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007) (quoting *Lundberg v. State*, 25 N.Y.2d 467, 470, 306 N.Y.S.2d 947, 255 N.E.2d 177 (1969))).

Here, Mr. Kennedy was clearly acting within his scope of employment at the time of the accident according to the record. Plaintiff has established that Mr. Kennedy was an FBI employee driving a federal vehicle at the time of the accident. Mr. Kennedy has also attested that he was driving the car to the FBI Buffalo Office on the morning of the incident to report to work, and that the accident occurred within his scope of duty. **ECF 24-2 at 5**. Thus, the record clearly shows that Mr. Kennedy was acting under the explicit permission of his employer that morning. Thus, viewed in the light most favorable to the non-moving party, there is no a genuine dispute of material fact as to the United States' *respondeat superior* liability. Plaintiff's cross-motion for summary judgment is **granted** on this issue. Upon establishing *respondeat superior* liability, this Court need not address Plaintiff's argument as to Defendant's motor vehicle owner vicarious liability.

B.) <u>The record reflects no genuine dispute of material fact as to whether Defendant committed negligence under New York law.</u>

Next, Plaintiff has moved for an Order declaring that the negligence of David Kennedy is the sole proximate cause of the collision at issue in this case. Plaintiff has met her burden of showing a genuine dispute of material fact as to this issue.

Under New York law, "a rear-end collision with a stopped vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle." *Vlachos v. Saueracker*, 10 A.D. 3d 683, 683 (2nd Dept. 2004). A sudden stop by the rear-ended party does not qualify as a non-negligent explanation that could rebut this presumption of negligence. *Mascitti v. Greene*, 250 A.D.2d 821 (2nd Dept. 1998).

In this case, Mr. Kennedy rear-ended the Plaintiff after she suddenly stopped in front of her. There are no facts in the record to suggest a non-negligent explanation for the collision even when viewed in the light most favorable to the non-moving party. Plaintiff's cross-motion for partial summary judgment as to Defendant's negligence is **granted.**

## Conclusion

For the reasons set forth below, Defendant's motion for summary judgment is **denied**, and Plaintiff's cross-motion for partial summary judgment is **granted.**

DATED at Burlington, Vermont, this 19th day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge